IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| TRACY GROVER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:06-CV-330 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act. For the reasons set forth herein, defendant's motion for summary judgment [doc. 10] will be denied, and plaintiff's motion for summary judgment [doc. 8] will be granted to the extent it seeks remand pursuant to sentence four of 42 U.S.C. § 405(g).[1]

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment . . . reversing the decision of the Commissioner of Social Security . . . remanding the cause for a rehearing." 42 U.S.C. § 405(g).

I.

*Procedural History*

Plaintiff applied for benefits in June 2002, claiming to be disabled by "right ventricular heart failure, pulmonary hypertension, sarcoidosis, fibromyalgia, chronic myofacial pain syndrome, chronic fatigue syndrome, migraines, sciatica, and TMJ [temporomandibular joint disorder]." [Tr. 52, 56]. She alleged a disability onset date of March 30, 2002. The applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") in April 2004.

On July 20, 2004, the ALJ issued a decision denying plaintiff's claim. He determined, at step two of the sequential evaluation process, that plaintiff has fibromyalgia, depression, sarcoidosis, sleep apnea, and migraine headaches, which are "severe" impairments but not equal, individually or in concert, to any impairment listed by the Commissioner. [Tr. 20]. Finding plaintiff unable to return to her past relevant work, the ALJ relied on vocational expert testimony and a nonexamining state agency physician [Tr. 173-80] in concluding that plaintiff retained the residual functional capacity to perform a significant range of light jobs. [Tr. 25-27]. Accordingly, she was deemed ineligible for benefits.

Plaintiff then sought, and was denied, review by the Commissioner's Appeals Council. [Tr. 5]. The ALJ's ruling became the Commissioner's final decision. *See* 20 C.F.R.

§ 404.981. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.981.

II.

*Background and Testimony*

Plaintiff was born in 1964. [Tr. 52]. Her past relevant work is in telemarketing, bookkeeping, and management. [Tr. 57, 78]. She testified that she stopped working in the spring of 2002 due to "constant pain because of spasms and extreme[] exhaust[ion] due to heart condition." [Tr. 56, 318]. Although she was allegedly diagnosed with fibromyalgia as early as 1996, plaintiff states that her pain has increased since a 2001 automobile accident. [Tr. 73, 181-82]. She claims that her worsening conditions cause "extreme and debilitating" fatigue, stiffness, and pain. [Tr. 56].

Plaintiff states that, "I don't do anything at all." [Tr. 74, 104]. She purportedly falls asleep "uncontrollably throughout the entire day" and is unable to bathe independently. [Tr. 88, 104, 334]. She is admittedly able to do light housekeeping and laundry, prepare simple meals, drive, crochet, play cards, use the internet, and care for her pets. [Tr. 90-92, 97, 323-25]. However, she allegedly has minimal stamina and must sleep most of each day. [Tr. 183-84, 330-31].

III.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Nonetheless, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490 (1951).

A claimant is entitled to disability insurance payments under the Social Security Act if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423 (d)(2)(A). Disability is evaluated pursuant to a five-step analysis summarized by the Sixth Circuit as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Claimants bear the burden of proof at the first four steps. *See Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id*.

IV.

*Analysis*

A. Dr. Sizemore

The record contains diagnoses of fibromyalgia [Tr. 239], moderate depression [Tr. 185], "very mild degenerative disc disease" [Tr. 225], "mild to moderate" sleep apnea [Tr. 288], and pulmonary hypertension [Tr. 142] secondary to cardiac sarcoidosis [Tr. 156, 162].[2] At plaintiff's request, treating internist Thomas Kirby referred her to rheumatologist Kenny Sizemore in 2004 for "some second opinions on fibromyalgia." [Tr. 296]. Although there are no records to document prior consultation, both plaintiff and Dr. Kirby state that plaintiff also saw Dr. Sizemore on one previous occasion regarding her sarcoidosis. [Tr. 256, 321, 331].

At the March 2004 consultation, Dr. Sizemore diagnosed fibromyalgia, depression, and "severe edema." [Tr. 301]. He found plaintiff's sarcoidosis to be in remission. The consultation is evidenced by one page of handwritten office notes largely devoted to the compilation of plaintiff's subjective complaints. A diagram appears to possibly recognize some tender points, but there is no indication if enough were present to

---

[2] Cardiac sarcoidosis involves "lesions ranging from a few asymptomatic, microscopic granulomas to widespread infiltration of the myocardium[.]" The condition may be chronic and progressive, or it may spontaneously go into remission following an abrupt onset. *Dorland's Illustrated Medical Dictionary* 1599 (29th ed. 2000).

6

satisfy the generally recognized standard for fibromyalgia diagnosis.[3] Dr. Sizemore described a "'dead end' situation" regarding fibromyalgia with "no options remaining." [Tr. 301].

Two weeks later, Dr. Sizemore completed a preprinted fibromyalgia evaluation form on plaintiff's behalf, answering that she meets the American Rheumatological Society's criteria for fibromyalgia and that her prognosis was "guarded/poor." [Tr. 299]. Dr. Sizemore further opined that plaintiff was unable to work full-time even at the sedentary level, citing problems with pain, concentration, absences, rest, and stress. [Tr. 299-300].

The ALJ mentioned, but did not adopt, Dr. Sizemore's assessment. In full, the ALJ stated that "Dr. Sizemore cannot be considered a treating source for the claimant's fibromyalgia and his highly restrictive opinion cannot be given considerable weight." [Tr. 23]. Dr. Sizemore's extraordinarily minimal records do not document an "ongoing treatment relationship" of "a frequency consistent with accepted medical practice." *See* 20 C.F.R. § 404.1502. Therefore, the ALJ correctly concluded that Dr. Sizemore is not a "treating source" under Social Security law. *See id.*

Nonetheless, plaintiff correctly argues that the ALJ's explanation is insufficient to survive substantial evidence review. Dr. Sizemore is an examining specialist, and the Commissioner is under a duty to give greater weight to the opinions of examining specialists,

---

[3] "[F]ibromyalgia patients present no *objectively* alarming signs. . . . The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243-44 (6th Cir. 2007) (emphasis added).

*see* 20 C.F.R. § 404.1527(d)(1), (5), or to articulate a valid basis for not doing so. The fact that Dr. Sizemore's opinion is "highly restrictive" is - in and of itself - neither cause to accept or reject the assessment. Nor may the assessment be dismissed merely because Dr. Sizemore is a consulting source. It is in fact quite common in Social Security cases for consulting source opinions to carry the day.

Treating source status is merely one factor that the Commissioner must consider "in deciding the weight [to] give to *any* medical opinion." *See* 20 C.F.R. § 404.1527(d) (emphasis added). Other factors include examining and/or treatment relationship, supportability, specialization, and consistency with the record as a whole. *See id.* The ALJ appears to have given no consideration, for example, to Dr. Sizemore's specialization or to the fact that he personally examined the plaintiff. It is noteworthy that the ALJ instead adopted the assessment of a Dr. Misra [Tr. 173-80] who never examined the plaintiff and, obviously, was not a treating source. Further, while the administrative record documents that Dr. Sizemore is a rheumatologist [Tr. 305], there is no information pertaining to Dr. Misra's specialty, if any [Tr. 301-05]. *See Rogers*, 486 F.3d at 245 (fibromyalgia is within a rheumatologist's field of specialization).

The ALJ's decision to credit the opinion of Dr. Misra over the opinion of examining specialist Sizemore is simply not explained to this court's satisfaction. Plaintiff's claim will accordingly be remanded to the Commissioner for further evaluation and rehearing.

B. Dr. Scariano

Plaintiff also argues that statements by treating neurologist/neurophysiologist Jack Scariano were improperly ignored by the ALJ. In June 2002, Dr. Scariano wrote that "I do not see how she can work with all of her medical problems." [Tr. 213]. In September 2002, citing sarcoidosis, fibromyalgia, chronic intractable pain, and "memory problems," Dr. Scariano wrote that, "She is still unable to work and is still temporarily totally disabled at this time." [Tr. 212].

While these statements are not meaningfully addressed in the ALJ's opinion, there was no error. The Commissioner is required to evaluate "medical opinions." *See* 20 C.F.R. § 404.1527(d). "Medical opinion" is a term of art defined at 20 C.F.R. § 404.1527(a). "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *See id.* Dr. Scariano's conclusory statements fall far short of being a "medical opinion." "A statement by a medical source that you are 'disabled' or 'unable to work'" is not a "medical opinion." *See* 20 C.F.R. § 404.1527(e).

Whereas Dr. Sizemore's assessment contained specific, condition-related limitations such as excessive absences and rest, impaired concentration, and moderate-to-marked inability to deal with stress, Dr. Scariano's statements address only the ultimate issue of "disability," which is a question reserved to the Commissioner. *See id.* Therefore, Dr.

9

Scariano's opinions were not entitled to the same level of discussion as those of Dr. Sizemore.

## C. Remand

Plaintiff asks for an immediate award of benefits rather than a remand of her claim. A reviewing court can reverse and immediately award benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir.1994). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id*. The present case is not so clear.

As for fibromyalgia, plaintiff's claim is not comparable to the Sixth Circuit Court of Appeals's recent favorable decision in *Rogers*, where the administrative record was "replete with" credible fibromyalgia diagnoses. *See* 486 F.3d at 244. Here, as noted, Dr. Sizemore's fibromyalgia assessment is not meaningfully supported by documented tender points or "process of elimination" testing , and diagnoses by Drs. Kirby and Scariano are even less well-supported.

In addition, the views of treating physician Kirby suggest that plaintiff's fibromyalgia may not be as limiting as alleged. On November 25, 2003, he wrote that, "She is going for disability per Dr. Scariano. I told her that I would leave that to them but that my thought would be that disability is the wrong thing to do with a diagnosis like fibromyalgia.

She actually needs to keep moving and keep active." [Tr. 254]. Standing alone, this is of course as much of a general philosophical statement as it is an assessment of plaintiff's individual capabilities. However, Dr. Kirby has on other occasions also stated that plaintiff "for the most part does fairly well with," and "for the most part has pretty good control of," her "fairly stable" fibromyalgia, for which medication was "work[ing] quite well." [Tr. 259, 262-63].

Also, the limited value of Dr. Scariano's statements is further diminished by his apparent ongoing consideration of plaintiff's sarcoidosis. His June 2002 statement that, "I do not see how she can work with all of her medical problems" [Tr. 213] and his subsequent similar comment the following September [Tr. 212], are in part based on prior observation of "fairly significant" and "marked" consequences of sarcoidosis. [Tr. 240]. However, in August 2002, pulmonary consultant Dr. Michael Brunson deemed the sarcoidosis "dormant." [Tr. 162]. This diagnosis coincided with a period in which plaintiff had temporarily stopped smoking. [Tr. 161]. In September 2002, Dr. Kirby stated that sarcoidosis "does not seem to be an issue for her right now." [Tr. 261]. In December 2002, Dr. Scariano noted that plaintiff "is doing better at this time." [Tr. 211]. In August 2003, Dr. Kirby continued to characterize the sarcoidosis as "stable," at least from a pulmonary standpoint. [Tr. 256]. Plaintiff's continued pulmonary and respiratory complaints are therefore brought into question, particularly in light of her continued smoking. [Tr. 319].

Plaintiff's credibility is further challenged by her refusal to participate in physical therapy, even though treating physician Kirby clearly thinks she is capable of doing so. Dr. Kirby has "referred," "encouraged," "imperative[ly]" "suggested," "re-institute[d] . . . efforts," and is "still waiting[.]" [Tr. 258-60, 296]. Plaintiff "has not been able to make it there yet," purportedly "because of her car." [Tr. 258-60, 296, 320]. "[T]he individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7.

Lastly, the court notes that plaintiff claims that she "has difficulty with driving and only drives when her husband is with her" [Tr. 181, 316] and that she cannot grocery shop independently [Tr. 184, 323-24]. However, she elsewhere admitted as recently as July 2002 that a normal day includes "run[ning] to the store to get stuff for supper" while her husband is at work. [Tr. 97]. This contradiction further impacts plaintiff's credibility.

For the reasons discussed herein, the court cannot award benefits based on the current record. *See Faucher,* 17 F.3d at 176. The final decision of the Commissioner will instead be reversed and remanded for further evaluation and rehearing consistent both with this opinion and with the principles set forth in *Rogers*. It appears likely to the undersigned that medical advisor testimony will be needed at plaintiff's next administrative hearing. If so, an advisor should be chosen who is qualified to address the combined effect of plaintiff's various impairments.

An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge